IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROMAN MOSAIC AND TILE COMPANY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| LIBERTY MUTUAL INSURANCE COMPANY and GREAT NORTHERN COMPANY, | : | |
| Defendants. | : | NO. 11-6004 |

**MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                       **April 5, 2012**

**I.     Introduction**

This case is about the interpretation of a single term—"occurrence"—in a commercial general liability ("CGL") insurance policy governed by Pennsylvania law. The action was brought by Plaintiff Roman Mosaic and Tile Company ("Roman Mosaic"), which was subcontracted to build and install shower pans and drains in the bathrooms of a Bala Cynwyd, Pennsylvania condominium complex in 2005. One of the Defendants, Liberty Mutual Insurance Company ("Liberty"), is an insurance company that issued a CGL policy to Roman Mosaic, with effective dates of coverage from October 1, 2009 to October 1, 2010. The other Defendant, Great Northern Company ("Great Northern"), is a separate insurance company that filed a complaint against Roman Mosaic in June 2011 in the Court of Common Pleas of Montgomery County. The Great Northern complaint subrogated a claim by Frank Kessler, its insured, regarding water damage to Kessler's property; among other things, the complaint alleged that the

water damage to Kessler's condominium was caused by improper installation and other work performed by Roman Mosaic during construction of the bathrooms.

Liberty has filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (ECF No. 6). The principal question presented in the Motion is whether the damages alleged in the underlying lawsuit by Great Northern were caused by an "occurrence," as defined by the CGL policy issued to Roman Mosaic. If so, Liberty has a duty to provide a defense and indemnity to Roman Mosaic, pursuant to the terms of the policy.

For the reasons explained below, the Court holds that the underlying litigation does not involve an "occurrence"; accordingly, Liberty's Motion for Summary Judgment is GRANTED.[1]

## II.   Factual Background

The following facts are undisputed[2] or reflect Plaintiff's version of the facts in the record, pursuant to this Court's duty to view all facts and inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

As noted above, Liberty issued a CGL policy to Roman Mosaic with effective dates of coverage from October 1, 2009 to October 1, 2010. Def. SUF ¶ 1. Section I of the policy, entitled "Coverages of the Liberty Policy," provides, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay

---

[1] Because the Court disposes of the Motion on this basis, the Court declines to discuss Liberty's other arguments for summary judgment.

[2] For purposes of this Motion, Liberty submitted statements of material undisputed facts and Roman Mosaic responded to those statements ("Def. SUF" and "Pl. SUF"). The Court notes that Roman Mosaic mistakenly responded with admissions/denials to the numbered contentions in Liberty's Motion instead of to the numbered statements in Liberty's SUF. The numbered contentions of the Motion are substantially similar and sometimes identical to the statements in the SUF; however, the Court was careful to cross-reference all three documents to ensure that the Court's findings of fact properly reflect Roman Mosaic's actual admissions and denials.
   Roman Mosaic had the opportunity to submit its own statements of material undisputed facts, but it declined to do so.

>   as damages because of "bodily injury" or "property damage" to which this
>   insurance applies. We will have the right and duty to defend the insured
>   against any "suit" seeking those damages. However, we will have no duty
>   to defend the insured against any "suit" seeking damages for "bodily
>   injury" or "property damage" to which this insurance does not apply. We
>   may, at our discretion, investigate any "occurrence" and settle any claim or
>   "suit" that may result.

Def. Exh. A; Def. SUF ¶ 2. Section I further provides, among other things, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: (1)[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory[.]" Def. Exh. A; Def. SUF ¶¶ 2. Section V of the policy, entitled "Definitions," defines an "occurrence" under the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Def. Exh. A; Def. SUF ¶ 3.

In June 2011, Great Northern filed a complaint in the Montgomery County Court of Common Pleas against Roman Mosaic and two other defendants in a case captioned <u>Great Northern Ins. Co. v. Intech Construc. Inc.</u>, Docket No. 2011-16644 (Crt. of Common Pleas). Def. Exh. B; Def. SUF ¶ 9. The complaint subrogated a claim submitted to Great Northern by its insured, Frank Kessler, for water damage to his condominium in the amount of $98,788.58. Def. Exh. B; Pl. Br. at 2. Kessler purchased his condominium in 2009[3] and experienced leaks and extensive water damage in December of that year. Id. ¶¶ 13-14. Great Northern claimed that Kessler's damages were due to Roman Mosaic's faulty construction work, because Roman Mosaic was the subcontractor that constructed and installed certain features of the bathrooms when the condominium complex was built in 2005. Id. ¶ 9.

More specifically, the Great Northern complaint avers, <u>inter alia</u>, that Roman Mosaic was

---

[3] Kessler did not purchase the property from the original real estate developer of the condominium complex; rather, he purchased it from a subsequent owner. Audio File of 3/1/2012 at 1:30- 2:00 (ECF No. 12).

3

negligent insofar as it "fail[ed] to install . . . the main and guest bathroom showers, drains and waterproof membrane at the subject premises according to manufacturer specifications," "fail[ed] to comply with applicable statutes, codes, regulations, and generally recognized safety practices and standards," and "fail[ed] to exercise reasonable care and skill in the completion of the construction and/or installation of the main and guest bath showers."  Def. Exh. B. at 10; Def. SUF ¶¶ 13-17.

Roman Mosaic notified Liberty of Kessler's claims on or about February 24, 2010, prior to Great Northern's filing of its subrogation suit.  Def. Br. at 3; Def. SUF ¶ 19.  After an investigation, Liberty notified Roman Mosaic by letter dated August 18, 2010 that Kessler's claims against Roman Mosaic would not be covered under the CGL policy because the claims arose from "faulty work and/or products provided by Roman Mosaic."  Def. Exh. C; Def. SUF ¶ 19.

After Great Northern filed suit in the Court of Common Pleas in June 2011, Liberty confirmed that it was denying coverage to Roman Mosaic in a second letter dated August 3, 2011.  Def. Exh. D; Def. SUF ¶ 21.  The letter explained that Liberty had no obligation to defend or indemnify Roman Mosaic because "allegations of fault workmanship are not sufficiently fortuitous to be considered an accident[;]" thus, "the complaint [by Great Northern] does not allege an 'occurrence.'"  Def. Exh. D.

This action against Liberty for a declaratory judgment and for bad faith followed.

### III. Procedural History in this Court

On September 22, 2011, the case was removed to federal court from the Chester County Court of Common Pleas.  (ECF No. 1)  On November 30, 2011, Liberty filed this Motion for

Summary Judgment pursuant to Rule 56.  (ECF No.6)  On December 20, 2011, Roman Mosaic responded.  (ECF No. 7)  On January 3, 2012, Liberty replied.  (ECF No. 9)  On March 1, 2012, the Court held oral argument on the Motion.  Audio File 3/1/12 (ECF No. 12).  At argument, the parties were invited to submit a supplemental letter brief regarding the relevance vel non of Westfield Ins. Co. v. Bellevue Holding Co., No. 10-3696, 2012 WL 631883 (E.D. Pa. Feb. 24, 2012).  Liberty submitted its supplemental filing on March 7, 2012, and Roman Mosaic submitted its filing on March 8, 2012.  (ECF Nos. 14-15).

## IV.    Summary of the Motion

The principal issue in the Motion is the scope of the applicable insurance coverage under the CGL policy.  Liberty argues that it is not obligated to defend and indemnify its insured because the facts pleaded in the Great Northern complaint do not involve an "occurrence" as that term is defined in the policy.  In support of its argument, Liberty relies principally on the Supreme Court of Pennsylvania's decision in Kvaerner Metals Div. v. Comm. Union Ins. Co., 908 A.2d 888 (Pa. 2006) and its progeny.  In Kvaerner, the plaintiff in the underlying litigation had contracted with Kvaerner for the construction and design of a coke oven battery.  Id. at 891.  When numerous problems with the battery were discovered after its completion, the plaintiff sued Kvaerner for breach of contract and breach of warranty due to faulty workmanship.  Kvaerner, in turn, sued its CGL insurer to compel it to provide a defense and indemnity against the claims.  Id. at 891-92.  After a grant of allocatur, the Supreme Court of Pennsylvania held that Kvaerner was not entitled to coverage under the CGL policy, reasoning that "faulty workmanship does not constitute an 'accident' as required to set forth an occurrence under the CGL policies." Id. at 900.  The Court explained: "[T]he ordinary definition of 'accident' . . . implies a degree of

fortuity that is not present in a claim for faulty workmanship." Id. at 898.

Roman Mosaic's responsive brief argues that Kvaerner and its progeny are inapposite because the underlying lawsuits in that line of cases involved claims for faulty workmanship between parties who were in contractual privity with one another. Here, by contrast, Roman Mosaic was never party to a contract with Kessler, and the claims subrogated against it by Great Northern sound only in tort. Accordingly, in Roman Mosaic's view, the instant case should be guided by the Supreme Court of Pennsylvania's decision in Donegal Mut. Ins. Co. v. Baumhammer, 938 A.2d 286 (2007) and related cases. In Baumhammer, the Baumhammers' dependent son went on a shooting rampage, killing five people and injuring a sixth. Families of the victims sued the Baumhammers for various acts of negligence, such as failing to provide mental treatment for their son. Id. at 288-89. The Supreme Court held that coverage was triggered under the Baumhammers' homeowner's insurance policy, which indemnified them against claims brought against them for bodily injury resulting from an "occurrence." Id. at 291-92. Roman Mosaic points out that in Schuylkill Stone Corp. v. State Auto. Mut. Ins. Co., 735 F. Supp. 2d 150 (D.N.J. 2010) (applying Pennsylvania law), the holding in Baumhammer was extended to a dispute arising from residential construction problems, much like this one.

After oral argument on the Motion, the parties submitted supplemental briefs discussing the relevance vel non of Westfield Ins. Co. v. Bellevue Holding Co., No. 10-3696, 2012 WL 631883 (E.D. Pa. Feb. 24, 2012). In Westfield, the district court held, inter alia, that the principle of Kvaerner applied to faulty workmanship claims "regardless of the framework in which [they are] cast." Id. at *16. Explaining that "it is not the existence of the contract per se that causes the claims at issue to not be 'occurrences,'" the court held that even the claims that were not

asserted by parties in privity with the defendants were not entitled to coverage under the CGL policy.  Id.  In its supplemental brief, Liberty argued that the holding and reasoning in Westfield should guide the Court's analysis here; not surprisingly, Roman Mosaic disagreed, arguing that Westfield principally involved parties in privity with one another and, moreover, was factually distinguishable in other ways.

The Court turns now to the merits of Liberty's Motion.

## V.    Legal Standard

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by showing the district court that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The party opposing summary judgment must rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.  The district court may grant summary judgment "[i]f the evidence is merely colorable, or is not significantly probative." Anderson, 477 U.S. at 249 (internal citations omitted).  Under Rule 56, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences

in favor of the non-movant. Id. at 255 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

**VI. Discussion**

The interpretation of an insurance policy is a question of law properly decided by the Court. Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). Here, the CGL policy issued to Roman Mosaic contains a defense and indemnity clause that applies to any claims against Roman Mosaic for bodily injury or property damage that, among other limitations, is caused by an "occurrence." Def. Exh. A. The duty to defend is "broader than the duty to indemnify, in that [it] arises whenever an underlying complaint may 'potentially' come within the insurance coverage." The Frog, Switch & Mfg. Co. v. Travelers Insur. Co., 193 F.3d 742, 746 (3d Cir. 1999). For this reason, the Court will address the duty to defend first.

Under Pennsylvania law, the duty to defend must be determined in light of "the allegations in the underlying complaint"—in this case, the Great Northern complaint. See Erie Ins. Exchange v. Muff, 851 A.2d 919, 926 (Pa Super. Ct. 2004). Crucially, while a court must "construe[ ] the factual allegations of the underlying complaint liberally in favor of the insured," id. at 746, it is the facts alleged in the complaint, not merely "the particular cause of action that a complainant pleads" or the way in which the claims are styled, that determines whether the complaint triggers coverage. Mut. Ben. Ins. Co. v. Haver, 555 Pa. 534, 538-39 (1999); accord Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co., 609 F.3d 223, 231 (3d Cir. 2010) ("[T]here must be a causal nexus between the property damage and an 'occurrence,' i.e., a fortuitous event. Faulty workmanship, even when cast as a negligence claim, does not constitute such an event[.]").

8

In this case, the underlying complaint by Great Northern is styled to sound in negligence. Indeed, Great Northern explicitly avers that Roman Mosaic "<u>negligently</u>, carelessly, and/or recklessly breached its duty of care to Mr. Kessler" by virtue of its improper construction and installation of the condominium's bathrooms. Def. Exh. B at 10 (emphasis added). The facts alleged, however, seem much like the "faulty workmanship" allegations in <u>Kvaerner Metals Div. v. Comm. Union Ins. Co.</u>, 908 A.2d 888 (Pa. 2006)—namely, that poor workmanship by Roman Mosaic caused damage to the product of its work.

Accordingly, this Court's central inquiry is the question of whether the case is better analogized to <u>Kvaerner</u>, on the one hand, or to <u>Donegal Mut. Ins. Co. v. Baumhammer</u>, 938 A.2d 286 (2007) and, by extension, <u>Schuylkill Stone Corp. v. State Auto. Mut. Ins. Co.</u>, 735 F. Supp. 2d 150 (D.N.J. 2010), on the other hand. As <u>Kvaerner</u> and <u>Baumhammer</u> were already summarized above, the Court will not repeat those descriptions here. A description of <u>Schuylkill</u> has not yet been provided, however: in that case, the district court held that a subcontractor who helped build a residential community was entitled to a defense and indemnity under its CGL policy against claims of poor construction by the communities' homeowners. Relying largely on <u>Baumhammer</u>, the district court in <u>Schuylkill</u> determined that, although the claims asserted by the homeowners involved faulty workmanship, the gist of their action sounded in tort and the claims thus involved an "occurrence." <u>Id.</u> at 157. The court further reasoned that the facts of the case were distinguishable from <u>Kvaerner</u> because (1) the homeowner plaintiffs were subsequent purchasers of the damaged properties, so they were not in contractual privity with the subcontractor defendant, and (2) the homeowners were asserting claims for both property damage <u>and</u> bodily injury. <u>Schuylkill</u>, 735 F. Supp. 2d at 158.

9

Though not binding on this Court, the reasoning in Schuylkill is in some senses more relevant to the present inquiry—and a better foil to Kvaerner—than the reasoning in Baumhammer. Both Kvaerner and Schuylkill involve factual scenarios much like the dispute between Roman Mosaic and Liberty.

Fortunately, the Court's research uncovered a recent opinion in this jurisdiction, Westfield Ins. Co. v. Bellevue Holding Co., No. 10-3696, 2012 WL 631883 (E.D. Pa. Feb. 24, 2012), that thoughtfully addresses the competing considerations in Kvaerner and Baumhammer/Schuylkill. The Court finds the reasoning in the opinion to be directly on point and highly instructive. Westfield involved a series of CGL policies issued by Westfield Insurance Co. to a group of developers.[4] Those developers were sued by homeowners in a residential community that the developers had built. After purchasing their properties, the homeowners uncovered extensive hidden construction problems and sued the developers for the resulting property damage. The developers, in turn, sought a defense and indemnity from Westfield, with whom they had a CGL policy. On Westfield's motion for summary judgment, the court granted judgment in favor of Westfield on the basis that Westfield had no duty to defend or indemnify its insured. In so doing, the court relied heavily on Kvaerner and the Third Circuit's related opinion in Specialty Surfaces Int'l, Inc., 609 F.3d 223, concluding that all of the underlying claims by the homeowners were, in essence, faulty workmanship claims not caused by an "occurrence." Westfield, 2012 WL 631883, at *9-10. In the court's view, the fact that some of the claims were pleaded as negligence claims was, under the circumstances, irrelevant. Id.

---

[4] A more detailed explanation of the background of the case can be found in its exceptionally thorough discussion of the facts and procedural history. See Westfield, 2012 WL 631883, at *1-6.

What is more, the Westfield court reasoned one step further: it specifically rejected the argument that Westfield was required to defend or indemnify against claims by a subset of the homeowners who were secondary purchasers of their respective properties. Id. at *16. The court was unimpressed with the developer's contention that an absence of contractual privity with these secondary purchasers somehow vitiated the fact that all of the homeowners' claims involved "damages directly to the work product of the insured or damages that [were] 'a reasonably foreseeable result of the faulty workmanship.'" Id. at *15; see also id. at *16 ("As a primary matter, it is not the existence of the contract per se that causes the claims at issue to not be 'occurrences' . . . . [Rather,] Pennsylvania law explicitly declines to recognize this type of claim as accidental in nature, regardless of the framework in which it is cast."). Finally, the court expressly distinguished the case from Schuylkill, in which the parties to the underlying litigation also had no contractual relationship, on the basis that Schuylkill involved accidental personal injury. Westfield, 2012 WL 631883, at *15.

After a careful and independent review of the case law, as well as consideration of the parties' oral arguments and the supplemental briefs submitted after argument, the Court is persuaded by the analysis of Pennsylvania law as set forth in Westfield. Accordingly, the Court adopts the reasoning in Westfield for the purposes of deciding the merits of the instant Motion.

Here, as in Westfield, all of the claims in the Great Northern complaint—even those styled as negligence claims—fundamentally concern "the purported poor workmanship of" Roman Mosaic and "the foreseeable consequences of that workmanship," i.e., the water leaks and resulting damage to Kessler's condominium. Id. at *14. Moreover, as in Westfield, this case is distinguishable from Schuylkill because, among other things, the underlying litigation does not

involve a claim of personal injury. Therefore, as in Westfield, the principles espoused in Kvaerner command the finding that Great Northern's complaint does not involve an "occurrence" under the CGL policy.

Finally, the Court deems the Kvaerner precedent applicable for at least one additional reason, which was raised by Liberty at oral argument. See Audio File 3/1/12 at 20:00-21:30 (ECF No. 12). Specifically, Liberty emphasized that if the principles of Kvaerner and its progeny were limited to situations in which the parties to the underlying litigation had a contractual relationship, Roman Mosaic would have more rights under its CGL policy when sued by secondary purchasers of its work, like Kessler, than when sued by original purchasers of the very same work. That is, the same foreseeable damage from the same faulty workmanship would be transformed into an "occurrence" merely by virtue of the property's transfer from an original purchaser to a subsequent purchaser. The Court finds nothing in the case law, the language of the CGL policy, or the other facts and circumstances of this case to compel such a strange and seemingly unjustified result.[5]

In sum, Liberty has successfully demonstrated the absence of a genuine dispute of material fact regarding its alleged duty to defend Roman Mosaic against the Great Northern complaint. Furthermore, because there can be no duty to indemnify where there is no duty to defend, Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. 2005) (applying Pennsylvania law), Liberty is entitled to judgment as a matter of law with respect to Roman Mosaic's claims regarding both duties. Finally, because as a matter of law Liberty did not lack a reasonable basis

---

[5] Because the Court concludes that Liberty owes no duty to defend or indemnify Roman Mosaic even if Kessler and Roman Mosaic were not in privity with one another, the Court need not address Liberty's alternative argument that Kessler and Roman Mosaic were in privity with one another.

to deny Roman Mosaic's claim for benefits, Liberty is also entitled to judgment on the bad faith claim.[6]

## VII. Conclusion

For the reasons set forth above, Liberty's Motion for Summary Judgment is GRANTED with respect to all of Roman Mosaic's claims.

An appropriate Order follows.

O:\CIVIL 11-12\11-6004 Roman v. Liberty\Roman SJ Memo.wpd

---

[6] If for any reason higher authority ultimately determines that Roman Mosaic is entitled to a defense and/or indemnity under the CGL policy, Roman Mosaic's bad faith claim should still fail as a matter of law. Substantial Pennsylvania case law supports Liberty's position that faulty workmanship claims such as those asserted by Great Northern do not involve an "occurrence." Accordingly, Roman Mosaic cannot raise a genuine dispute of material fact tending to show that Liberty lacked a reasonable basis for the denial of coverage. See Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1977).

13